# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

DAI-JUAN TAIKAIN TAYLOR,    )
                                  )
         Plaintiff,        )
                                  )
v.                            )         CV623-030
                                  )
SHERIFF BRIAN        )
OLGOLSBEE, *et al.*,       )
                                  )
        Defendants.    )

## REPORT AND RECOMMENDATION

The undersigned previously screened *pro se* plaintiff Dai-Juan Taikain Taylor's Complaint, pursuant to 28 U.S.C. § 1915A. *See* doc. 10. Several claims were recommended to be dismissed and Taylor was directed to amend others. *See generally id.* The deadline to object to the recommendations and to submit the amendment have passed. Taylor has not clearly objected or submitted the required amendment. *See generally* docket. Instead, Taylor has filed a document titled "Supplemental Brief Adendum [sic] to Complaint In Affidavis [sic] form in the nature of administrative and maritime claim rule nisi." Doc. 12 at 1. Since, even considering the supplemental allegations with the original Complaint, Taylor's claims fail to state any claim upon which relief may be granted,

1

the Complaint, as supplemented, should be **DISMISSED**.[1]  *See* 28 U.S.C. § 1915A(b).  The prior Report and Recommendation is **VACATED**.  Doc. 10.

As discussed in the prior Report and Recommendation, Taylor alleges that he was incarcerated at "Jenkins County Jail House" in October 2022.  *See* doc. 1 at 5.  He was watching television, lost consciousness, and woke up "in a holding tank."  *Id.*  An unidentified officer informed him that he had been knocked out by other inmates and sexually assaulted.  *Id.*  He alleges that he "could see the surv[ei]llance video camera screen where the sheriff was editing the tape ('s[p]ol[i]ating')" the evidence of his assault.  *Id.*  He also alleges that "next to that screen [where the surveillance video was being "edited"] [he] witness[ed] a live feed of some Klue Klux Kans men [ ]holding a tribunal hearing giving orders to kill [him] through a motaroll [sic] radio[,]" and

---

[1]  As before, because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).  Conclusory allegations, however, fail.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).  As Taylor is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed.  *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

that he "was told personall[y] by the Sheriff [he] would be hanged[,] ne[u]tered and that [the Sheriff] would shoot [Taylor] [i]f [Taylor] didn't take a plea agreement." *Id.*

Taylor's "Supplemental Brief" substantially restates the allegations of his original Complaint. *Compare* doc. 12 at 1-3, *with* doc. 1 at 5. He reiterates that he was attacked by other inmates in 2022 in a detention area of the Jenkins County Sheriff's Office. *See* doc. 12 at 1. He lost consciousness and, when he woke up, a staff member informed him that he had been sexually assaulted. *Id.* He alleges that, from the cell where he was placed, he could observe the Sheriff and unidentified staff "editing" the video of his assault. *Id.* at 2. He alleges that, on a screen near the one where the "editing" occurred, "there was another flat screen monitor screen [sic] where [he] seen 3 men wearing Klue Klux Klan hoods in a wooden paneled room holding some strange tribunal hearing against [him] on a (live feed)." *Id.* He heard the contents of the "tribunal" "[d]ue to the reveaberation [sic] in the hard cell." *Id.* The "orders" were also "broadcasted [sic] through a motarola radio followed by a strange bell." *Id.* He alleges that the "orders" included various physical threats against him. *Id.* He alleges that "the sheriff [was] getting mad with his staff and

saying to them each time we receive a order [sic] we must have completed our task before the bell rings." *Id.* Finally, he alleges that the Sheriff threatened him if he did not "take a plea deal" or "told anyone about the rape." *Id.*

In a separate section of the "Supplemental Brief," titled "Things that I Heard and Know," Taylor also adds an allegation that one of his assailants was paid "$20,000 and a cell phone" by the Sheriff, it is unclear for what, and that someone, either the Sheriff or the assailant, "exploted [sic] the sexual assault on line specifically a site called Evil Angels under the title (We Know)." Doc. 12 at 3. He also alleges "the Sheriff filed a false [Prison Rape Elimination Act] report using a inmate [sic] that look similar to [Taylor] as if [Taylor] had done some act of indesent [sic] exposure of [his] body parts . . . ." *Id.* He alleges that "[t]he Sheriff cut large [illegible, possibly "lumps"] of [Taylor's] hair from [his] crown and [his] hair line while [Taylor] was uncounscience [sic] [and he] believe[s] they plan to plant them in a crime to fram [sic] [him]." *Id.* Finally, he alleges that "[t]he Sheriff is working with the regional Directors of the

Dept. of Corrections name Sheapard the regional of a different prison region [sic] to get [Taylor] murdered in prison." *Id.*

## I.   Improper Defendants[2]

In addition to Brian Olgolsbee, the Jenkins County Sheriff, Taylor names the "Jenkins County Commissioners Office" and "Jenkins Superior Court Judges Panel" as defendants. *See* doc. 1 at 4. As this Court has explained, "county commissions, as mere arms of [local] governments, are not generally considered legal entities subject to suit." *Allen v. Rhoves*, 2008 WL 170112, at *2 (S.D. Ga. Jan. 16, 2008); *see also Coley v. Bd. of Comm'rs of Turner Cnty., Ga.*, 2018 WL 11374959, at *4 (M.D. Ga. Sept. 20, 2018). Courts are also not subject to suit and the judges who compose them are immune. *See, e.g., Scott v. Superior Court of Bulloch Cnty.*, 2022 WL 946192, at *2 (S.D. Ga. Mar. 29, 2022). Moreover, there is no allegation in Taylor's Complaint even hinting at how those entities might have been implicated in the events at issue. *See generally* doc. 1. Those defendants should, therefore, be **DISMISSED**.

---

[2] Due to the substantial overlap between the claims in the Complaint and those asserted in the "Supplemental Brief," the Court incorporates the applicable analyses from its prior Report and Recommendation.

## II.    Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations and citations omitted).  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  Merely negligent failure to protect an inmate from attack does not justify liability under § 1983.  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).  "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort."  *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  The threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference."  *Id.* (internal quotation marks and citation omitted).

Taylor's Complaint does not allege any fact that suggests that any defendant was subjectively aware of any threat.  "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.

. . . Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008); *see also Robinson v. Owens*, 2014 WL 2617281, at *5 (M.D. Ga. June 12, 2014) (applying *Burnette* to analyze a failure-to-protect claim). Taylor's "Supplemental Brief" does not add any allegation that even suggests that any of his assailants posed a prior threat or that any defendant knew about that threat. *See generally* doc. 12. To the extent that he asserts a failure-to-protect claim, therefore, it should be **DISMISSED**.

### III.   Failure to Intervene

It is also possible that Taylor alleges that some prison staff was aware of his attack as it occurred and failed to intervene to stop it. A plaintiff asserting a failure-to-intervene claim must show that (1) another inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. *Johnson v. Boyd*, 568 F. App'x 719, 724-25 (11th Cir. 2014). Liability attaches only if the officer "'was physically able and had a realistic chance to intervene and act in time to protect the

inmate plaintiff.'" *Smith v. Andrews*, 2016 WL 6818755 at *4 (S.D. Ga. Nov. 16, 2016) (internal quotations and citation omitted). "Regardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.'" *Seals v. Marcus*, 2013 WL 656873 at *8 (M.D. Ga. Jan. 25, 2013) (quoting *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006)); *see also Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."); *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").

Taylor's Complaint is simply too vague concerning the circumstances of the alleged attack to discern whether any prison staff could have been, much less were, aware of it as it occurred. Even supposing that some staff member was aware, there is no indication of what that hypothetical individual's opportunity to realistically and safely intervene would have been. Again, the "Supplemental Brief" does not

include any allegation that any defendant knew about the assault as it occurred or, even if some did, that he or she was in a position to intervene. *See generally* doc. 12. Accordingly, to the extent that Taylor asserts a failure-to-intervene claim, it should be **DISMISSED**.

## IV.   Remaining Allegations

Taylor's remaining allegations push the limits of credibility. He alleges that he observed Sheriff Olgolsbee "editing" a surveillance video of his attack. Doc. 1 at 5. He also allegedly observed live video of Klu Klux Klan members "[ ]holding a tribunal hearing giving orders to kill [him] through a motaroll [sic] radio." *Id.* Finally, he alleges that he was threatened by the Sheriff with physical violence if he "didn't take a plea agreement." *Id.* Although his "Supplemental Brief," as discussed above, provides additional detail, those details do not state any claim.

The allegation that the Sheriff verbally threatened Taylor is simply not actionable. As this Court has explained, "verbal abuse, without more, does not state a claim under § 1983." *Reid v. Wilkes*, 2018 WL 1569860, at \*4 (S.D. Ga. Mar. 6, 2018); *see also Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866 (11th Cir. 2008) (". . . Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim

because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."). "Though [the language Taylor alleges] was unprofessional, offensive, and, arguably, detestable, it is a distant cry from violating a federally protected right." *Lang v. Aguilar*, 2020 WL 9848839, at *1 (S.D. Ga. Dec. 22, 2020). Accordingly, any claim arising from alleged verbal threats or abuse should be **DISMISSED**.

Even crediting Taylor's assertion that he witnessed the Sheriff destroying or altering evidence of his attack, that conduct is also not actionable. Section 1983 provides a remedy for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," of the United States. 42 U.S.C. § 1983. The Court can discern no constitutional or statutory right plausibly implicated by destruction of evidence that a person was the victim of a crime. To the extent that such evidence might support the prosecution of the perpetrators, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Since his

allegation concerning the video does not implicate any right, any claim arising from that allegation should be **DISMISSED**.

Finally, Taylor's allegations concerning the "live feed" of the Ku Klux Klan "tribunal" are frivolous.  The Supreme Court has explained that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Taylor's allegations rise to that level.  The allegations made under the heading "Things that I Heard and Know" are simply too vague or incredible to support any claim.  *See, e.g., Iqbal*, 556 U.S. at 678.  Any claim asserted based on that allegations should, therefore, be **DISMISSED**.

## V.    **Improper Relief**

Taylor's original Complaint seeks, as relief, an order removing an unidentified criminal case against him to federal court.  *See* doc. 1 at 6.  He also requests that the Court "[o]rder a FBI [i]nvestigation of this matter."  *Id.*  Neither request seeks relief that this Court can provide.

His "Supplemental Brief" does not discuss any additional relief that he seeks. *See generally* doc. 12.

Private citizens are simply not permitted to initiate criminal actions in federal court. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."))); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."). The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution. *See, e.g., Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical

security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case."). Taylor's request for an investigation should, therefore, be **DISMISSED**.

This Court is also precluded from interfering in any ongoing state prosecution. Longstanding abstention jurisprudence cautions against federal courts' interference in state court proceedings. *Younger v. Harris*, 401 U.S. 37 (1971) (except in extraordinary circumstances, a federal court must abstain from deciding issues in an ongoing criminal proceeding in state court); *see also Jackson v. Georgia*, 273 F. App'x 812, 813 (11th Cir. 2008) ("Attentive to the principles of equity, comity, and federalism, the Supreme Court has recognized that federal courts should abstain from exercising jurisdiction in suits aimed at restraining state criminal prosecutions."). A federal court may not enjoin the state court criminal

proceeding unless: (1) there is a "great and immediate" danger of irreparable harm to be suffered as a result of the prosecution; (2) the state law flagrantly and patently violates the Constitution; (3) there is a showing of bad faith or harassment; or (4) other unusual circumstances call for equitable relief. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citing *Younger*, 401 U.S. at 46-54). Taylor's allegations do not plausibly suggest any basis for the extraordinary intervention he seeks. His request should, therefore, be **DISMISSED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and

recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

 **SO REPORTED AND RECOMMENDED**, this 10th day of July, 2023.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA